


SCANNED

✓ FILED   ___ ENTERED
___ LOGGED ___ RECEIVED

**U.S. Department of Justice**
10:14 am, Dec 03 2021

*United States Attorney*
*District of Maryland*
*Southern Division*

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ dh ___ Deputy

---

*KOH*
*Caitlin R. Cottingham*
*Assistant United States Attorney*
*Caitlin.Cottingham@usdoj.gov*

*Mailing Address*
*6500 Cherrywood Lane, Suite 200*
*Greenbelt, MD 20770-1249*

*Office Location*
*6406 Ivy Lane, 8th Floor*
*Greenbelt, MD 20770-1249*

*DIRECT  301-344-0862*
*MAIN  301-344-4433*
*FAX  301-344-4516*

October 19, 2021

Amy S. Fitzgibbons, Esq.
Assistant Federal Public Defender
Office of the Federal Public Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770

   Re: <u>United States v. Brandon Fitzgerald-Holley</u>,
     Criminal No. GJH-21-250

Dear Counsel:

  This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Brandon Fitzgerald-Holley (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **November 2, 2021 at 5:00 p.m.,** it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

  1. The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with wire fraud, in violation of 18 U.S.C. § 1343. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

Elements of the Offense

  2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland: (1) there was a scheme or artifice to defraud, or to obtain money or property by materially false and fraudulent pretenses, representations, or promises, as alleged in the Indictment; (2) the Defendant knowingly and willfully participated in the scheme or artifice to defraud with knowledge of its fraudulent nature and with the specific intent to defraud; and (3) in the execution of that scheme, the Defendant used or caused the use of the interstate wires, as specified in the Indictment.

Rev. August 2018

Penalties

3.      The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 1343 | N/A | 20 years | 3 years | $250,000 or twice the gross gain (or loss), whichever is greater | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Rev. August 2018

Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

Rev. August 2018

3

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.       By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization.  The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status.  The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty.  The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

5.       The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.       This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.  This Office and the Defendant further agree that the applicable advisory guidelines apply as follows:

a.       The base offense level is **7**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(1).

b.       A **12**-level increase applies, pursuant to U.S.S.G. § 2B1.1(b)(1)(G), because the amount of actual or intended loss involved in the offense was more than $250,000 but not more than $550,000.

c.       This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty.  This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies

Rev. August 2018

involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).  This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.  At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.      In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all rights, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever.  This includes a waiver of all rights to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

Rev. August 2018

       i.         The Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds any sentence within the advisory guidelines range resulting from an offense level of **16**; and

       ii.      This Office reserves the right to appeal any term of imprisonment to the extent that it is below any sentence within the advisory guidelines range resulting from an offense level of **16**.

       c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

       a.      a money judgment of at least $305,854 in U.S. currency equal to the total proceeds obtain by the Defendant; and

       b.      a 2020 Dodge Charger Scat, Vehicle Identification Number 2C3CDXGJ5LH128652.

13.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. This Office agrees to seek the Attorney General's approval to apply forfeited assets to the Defendant's Restitution Order.

14.    The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

Rev. August 2018

15.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

16.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

18.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Rev. August 2018

## Entire Agreement

19.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

*Caitlin R. Cottingham*
Caitlin R. Cottingham
Assistant United States Attorney

Joseph Beemsterboer
Acting Chief, Fraud Section
John J. Liolos
Trial Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/29/2021
Date

Branden Fitzgerald-Holley

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

10/29/2021
Date

Amy Fitzgibbons
Assistant Federal Public Defender

Rev. August 2018

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Between at least January 2020 through August 2020, and at all times relevant to the conduct described below, the Defendant, **BRANDON FITZGERALD-HOLLEY** ("**FITZGERALD-HOLLEY**") was a resident of Maryland.

### *The Coalition for Social Justice and Reform Incorporated*

In 2018, **FITZGERALD-HOLLEY** founded the Coalition for Social Justice and Reform Incorporated (the "Coalition") and registered the Coalition as a non-profit in the Commonwealth of Virginia. **FITZGERALD-HOLLEY** was listed as the Chief Executive Officer ("CEO") of the Coalition. Since its formation, the Coalition was largely non-operational; the Coalition did not have any regular operations or income and did not have any employees, pay any salary or payroll expenses, or otherwise employ or engage any individuals. At all times between the creation of the Coalition and October 2021, **FITZGERALD-HOLLEY** was the only individual who acted on behalf of the Coalition.

### *Fraudulent Economic Injury Disaster Relief Loan Application*

The Economic Injury Disaster Loan ("EIDL") program was a Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. During the COVID-19 pandemic, the SBA was authorized to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic and to issue advances of $10,000. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was required to also certify that all the information in the application was true and correct to the best of the applicant's knowledge.

On or about March 31, 2020, **FITZGERALD-HOLLEY** submitted an application to the SBA on behalf of the Coalition for an EIDL loan in the amount of $150,000, as well as an EIDL advance. The EIDL application listed **FITZGERALD-HOLLEY** as the CEO of the Coalition. On the EIDL application, **FITZGERALD-HOLLEY** falsely stated that the Coalition had 25 employees and had $546,000 of gross revenue and $500,000 of nonprofit costs for the 12-month

Rev. August 2018

period prior to the COVID-19 pandemic. In reality, the Coalition had no employees or gross revenue in the 12-month period prior to the COVID-19 pandemic.

On the EIDL application, **FITZGERALD-HOLLEY** provided the SBA with the number of an account at Navy Federal Credit Union ("NFCU") ending in 6421 ("NFCU Account 6421"), and falsely indicated that this account was in the name of the Coalition. In reality, NFCU Account 6421 was **FITZGERALD-HOLLEY**'s personal account. At the time he submitted the EIDL application, **FITZGERALD-HOLLEY** was the only signatory on the account. On or about June 3, 2020, the SBA denied the Coalition's application for an EIDL.

On or about June 13, 2020, **FITZGERALD-HOLLEY** contacted the SBA to request reconsideration of the EIDL application on behalf of the Coalition. Within the request for reconsideration, **FITZGERALD-HOLLEY** provided a new bank account for the Coalition, which was an account at JP Morgan Chase ending in 2073 ("JP Morgan Account 2073"). **FITZGERALD-HOLLEY** opened JP Morgan Account 2073 on or about June 13, 2020 in the name of the Coalition. **FITZGERALD-HOLLEY** signed the account opening documentation as the president of the Coalition and was listed as the sole signatory. The SBA did not approve **FITZGERALD-HOLLEY**'s request for reconsideration of his EIDL application or provide **FITZGERALD-HOLLEY** with any EIDL funding.

Both the EIDL application **FITZGERALD-HOLLEY** submitted on behalf of the Coalition on or about March 31, 2020 and the reconsideration request that **FITZGERALD-HOLLEY** submitted on or about June 13, 2020, traveled from **FITZGERALD-HOLLEY** in the District of Maryland, to the SBA, via interstate wire.

*The Paycheck Protection Loan Application*

In connection with the COVID-19 pandemic, Congress authorized forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications. The PPP loan application required the applicant to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.

Unlike the EIDL program, which was administered solely by the SBA, a PPP loan application was required to be processed by a participating lender, such as a financial institution. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

Rev. August 2018

On or about June 13, 2020, shortly after his fraudulent EIDL application was denied, **FITZGERALD-HOLLEY** submitted an application to Institution 1 for a PPP loan in the amount of $305,854. Institution 1 was an online financial technology company that specialized in small business lending and participated as a non-bank PPP lender to small businesses.

The PPP loan application that **FITZGERALD-HOLLEY** submitted listed **FITZGERALD-HOLLEY** as the CEO of the Coalition. On the PPP loan application, **FITZGERALD-HOLLEY** again falsely represented that the Coalition had 25 employees. **FITZGERALD-HOLLEY** also falsely stated that the Coalition had average monthly payroll costs of $122,342. In reality, the Coalition had no employees or payroll expenses.

In addition to providing false information on the PPP loan application itself, **FITZGERALD-HOLLEY** also created fake documents to further his fraudulent PPP loan application. As part of the PPP, applicants were required to provide documentation to verify certain information in their applications. The Coalition did not have such documentation because the Coalition did not have employees, pay payroll or pay payroll taxes. **FITZGERALD-HOLLEY** created and submitted a fraudulent IRS Form W-3 Transmittal of Wages and Tax Statement ("Form W-3") for the tax year 2019. The fraudulent IRS Form W-3 was dated March 12, 2020, and was signed by **FITZGERALD-HOLLEY** on behalf of the Coalition. The fake Form W-3 falsely stated that the Coalition had 25 employees with total wages of $1,385,000 for the tax year 2019. In addition, **FITZGERALD-HOLLEY** created and submitted a fraudulent IRS Form 940 Employers Annual Federal Unemployment Tax Return ("Form 940") for the tax year 2019, which listed **FITZGERALD-HOLLEY** as the CEO of the Coalition. In reality, the Coalition never submitted a Form W-3 or Form 940 for the tax year 2019 and these documents were fabricated by **FITZGERALD-HOLLEY**.

On or about June 13, 2020, the Coalition's PPP loan application was approved. **FITZGERALD-HOLLEY** signed the note to the SBA as the CEO of the Coalition. On or about June 16, 2020, Institution 1 sent $305,854 in PPP loan proceeds via interstate wire into **FITZGERALD-HOLLEY**'s personal checking account, NFCU Account 6421.

Both the PPP loan application and the fraudulent Form W-3 and Form 940 were transmitted by **FITZGERALD-HOLLEY** from Maryland to recipients outside of Maryland via interstate wire. In addition, the wire of $305,854 in PPP loan proceeds was caused by **FITZGERALD-HOLLEY** and traveled via interstate wire from Institution 1 to NFCU Account 6421 and were then accessed by **FITZGERALD-HOLLEY** in Maryland.

### *Misappropriation of PPP Funds*

Upon receiving the fraudulently obtained PPP proceeds into NFCU Account 6421, **FITZGERALD-HOLLEY** misappropriated the proceeds for personal use, including transferring the proceeds to other accounts held by **FITZGERALD-HOLLEY** and to fund purchases of personal items, including clothing, furniture, a pool table, and televisions and other electronic equipment. **FITZGERALD-HOLLEY** also used fraud proceeds to fund a vacation rental. In addition, **FITZGERALD-HOLLEY** used PPP loan fraud proceeds to purchase a 2020 Dodge Charger Scat, Vehicle Identification Number 2C3CDXGJ5LH128652, as well as various vehicle accessories.

Rev. August 2018

As noted above, PPP loan proceeds were required, by statute, to be put towards certain costs, including payroll and mortgage expenses. **FITZGERALD-HOLLEY** did not use any of the $305,854 in PPP loan proceeds towards allowable expenses and, instead, misappropriated all of the proceeds. The actual loss caused by **FITZGERALD-HOLLEY**'s scheme was $305,854.

SO STIPULATED:

Caitlin R. Cottingham
Assistant United States Attorney
John Liolos
Trial Attorney

Brandon Fitzgerald-Holley
Defendant

Amy Fitzgibbons
Counsel for Defendant

Rev. August 2018                                                    12