IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GJH-21-250 |
| | * | |
| BRANDON FITZGERALD-HOLLEY, | * | |
| | * | |
| Defendant | * | |
| | * | |

\*\*\*\*\*\*\*

## POSITION OF THE UNITED STATES ON SENTENCING AND RESTITUTION

Comes now the United States of America, by and through its undersigned counsel, and submits this Position on Sentencing and Restitution. Sentencing is set for March 7, 2022. As set forth below, the government respectfully requests that this Court impose a sentence at the low end of the advisory range under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") and order the Defendant, Brandon Fitzgerald-Holley, to pay full restitution in the amount of $305,854. In support of this position, the government submits as follows:

### BACKGROUND

In the Spring of 2020, in connection with the COVID-19 pandemic, Congress authorized several programs that provided financing to small businesses and other entities facing hardships as a result of the ongoing pandemic. The Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") were among these financing programs. Both the PPP and EIDL were overseen by the Small Business Administration ("SBA").

The EIDL program provided low-interest financing to small businesses, renters, and homeowners experiencing substantial financial disruption due to the COVID-19 pandemic in the form of loans and advances of up to $10,000. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information

1

about its operations, such as the number of employees, gross revenues for the 12-month period preceding the onset of the COVID-19 pandemic.  The applicant was required to also certify that the information in the application was true and correct to the best of the applicant's knowledge.  The EIDL program was overseen by the SBA, who processed EIDL applications and disbursed the EIDL funds.

The PPP program authorized forgivable loans to small businesses and placed restrictions on the ways in which borrowers could spend PPP funds – primarily payroll costs, interest on mortgages, rent, and utilities.  Under the terms of the PPP, loans were only available to small businesses that existed and were in operation *prior to* the onset of the COVID-19 pandemic in early 2020.  Thus, in order to obtain a PPP loan, a qualifying business was required to submit a signed application that included information about the business's prior expenses, including (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  Applicants were also required to submit documentation, including tax documents, verifying the business's prior payroll expenses.

In contrast to the EIDL program where borrowers applied to the SBA directly, under the PPP, borrowers applied through participating lenders—private financial institutions that worked with the SBA to process PPP applications and disburse funds.  The participating lender would process the PPP application, and, if approved, fund the loans, which were 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.  Under the terms of the PPP, for a lender to seek repayment from the SBA on a PPP loan, the lender must comply with a detailed process under the SBA's rules.

**THE DEFENDANT'S SCHEME TO DEFRAUD**

In or around March 2020, Fitzgerald-Holley applied to the SBA for an EIDL and an advance on behalf a non-operational non-profit, the Coalition for Social Justice and Reform Incorporated (the "Coalition"). As part of that application, Fitzgerald-Holley fraudulently represented that the Coalition had 25 employees and had $546,000 of gross revenue and $500,000 of nonprofit costs for the 12-month period prior to the COVID-19 pandemic. In reality, the Coalition never had any employees; it was an entity formed by Fitzgerald-Holley in 2018 that never had any regular business operations, expenses, or income. Thus, Fitzgerald-Holley made materially false and misleading statements to the SBA in an effort to fraudulently obtain EIDL funds that were intended for legitimate small businesses suffering financial hardship as a result of the COVID-19 pandemic. In or around June 2020, the SBA denied the application; Fitzgerald-Holley did not receive any EIDL funds on behalf of the Coalition.

On or about June 13, 2020, shortly after his fraudulent EIDL application was denied, Fitzgerald-Holley fraudulently applied for a PPP loan in the amount of $305,854. As part of the application, Fitzgerald-Holley falsely claimed that the Coalition had 25 employees with total wages of $1,385,000 for the tax year 2019 and average monthly payroll costs of $122,342. In addition, Fitzgerald-Holley created and submitted a fraudulent IRS Form 940 Employers Annual Federal Unemployment Tax Return ("Form 940") for the tax year 2019, which listed Fitzgerald-Holley as the CEO of the Coalition. In reality, the Coalition never submitted a Form W-3 or Form 940 for the tax year 2019 and these documents were fabricated by Fitzgerald-Holley.

As indicated above, while EIDL applications were processed and funded by the SBA directly, PPP applications were processed and funded by participating lenders. In this case, Fitzgerald-Holley applied for PPP funding through Institution 1, which was an online financial

technology company that specialized in small business lending.[1]  Institution 1 participated as a non-bank PPP lender to small businesses and utilized servers in Virginia for processing PPP loans.

On or about June 13, 2020, based on the false representations made by Fitzgerald-Holley, Institution 1 approved the PPP loan application submitted by Fitzgerald-Holley.  Fitzgerald-Holley signed the note for the PPP loan on behalf of the Coalition as the CEO and provided Institution 1 with bank account information for wiring the funds.  On or about June 16, 2020, Institution 1 sent $305,854 in PPP loan proceeds via interstate wire into Fitzgerald-Holley's personal checking account at his direction.  Once the funds arrived in his account, Fitzgerald-Holley proceeded to transfer funds between and among various accounts that he controlled, both in his name and in the name of the Coalition.  Fitzgerald-Holley proceeded to use the $305,854 in fraudulent proceeds for personal use, including purchasing a Dodge Charger and accessories, totaling more than $84,000, renting luxury vacation properties, and withdrawing more than $64,000 in cash and spending over $23,000 on other personal items in the 30 days following his receipt of the fraud proceeds.

## PROCEDURAL HISTORY

In October 2020, law enforcement executed a search warrant at Fitzgerald-Holley's home. During the search, law enforcement seized the Dodge Charger.  Law enforcement also identified and seized several expensive items Fitzgerald-Holley had purchased, including television equipment and stadium seating, as well as other furniture.  Fitzgerald-Holley agreed to voluntarily speak with law enforcement and signed an advice of rights form acknowledging that understood and was waiving his right to remain silent and right to have counsel appointed.  During the

---

[1] Institution 1 is the victim of Fitzgerald-Holley's scheme and is, therefore, not identified by name in this filing.  Institution 1 has submitted a statement regarding restitution, which is attached as Exhibit A and is being filed under seal.

interview, Fitzgerald-Holley acknowledged that he had applied for the PPP loan and submitted the paperwork. Fitzgerald-Holley acknowledged that the Coalition did not have any employees and it was just him. He also indicated that the Dodge Charger had been purchased with PPP funds, but he intended to use it for the Coalition. Fitzgerald-Holley was also questioned during the interview by an agent from the Social Security Administration Office of Inspector General about continuing to receive disability payments while he was employed. At the conclusion of the interview, Fitzgerald-Holley was served with a letter indicating that he was the target of a grand jury investigation and providing instructions for how he could obtain counsel.

Fitzgerald-Holley did not contact counsel or take any steps to resolve the criminal matter. On July 7, 2021, a grand jury returned a three-count indictment against Fitzgerald-Holley, charging him with Wire Fraud (18 U.S.C. § 1343) and Money Laundering (18 U.S.C. § 1957). ECF No. 1. The charges stemmed from Fitzgerald-Holley's fraudulent submission of the PPP loan and laundering of the proceeds through multiple accounts. On December 3, 2021, Fitzgerald-Holley pleaded guilty pursuant to a plea agreement to Count One of the Indictment, which charged him with Wire Fraud, in violation of 18 U.S.C. § 1343. ECF No. 16. As part of his plea agreement, Fitzgerald-Holley acknowledged that he fraudulently submitted the EIDL and PPP loan applications; that the Coalition did not have any business operations, expenses, or payroll costs; that he misappropriated the PPP funds for personal use and did not spend them on authorized items; and that he falsified tax documents to further the scheme. Fitzgerald-Holley also agreed that he caused a loss of $305,854 through the scheme.

## APPLICATION OF THE SENTENCING GUIDELINES

The government agrees with the Guidelines calculation as set forth in the Presentence Investigation Report ("PSR") prepared by the Probation Officer. As set forth in the PSR, the base

offense level for wire fraud pursuant to U.S.S.G. §2B1.1(a)(1) is 7. The actual loss in this case is approximately $305,854, which results in application of a 12-level enhancement under U.S.S.G. §2B1.1(b)(1)(G) based on loss greater than $250,000 but less than $550,000. Therefore the total offense level is 19. The Defendant timely accepted responsibility by pleading guilty, resulting in a reduction of two levels under U.S.S.G. §3E1.1(a) and the government anticipates moving at sentencing for an additional one-level reduction under U.S.S.G. §3E1.1(b), resulting in a total offense level of 16. Based on Fitzgerald-Holley's criminal history, the advisory range under the Guidelines is 21 to 27 months of imprisonment.

## APPLICATION OF THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

### I. The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553(a)(1))

The nature and circumstances of the offense warrant a sentence at the low end of the Guidelines. During the midst of a pandemic, the Defendant submitted not one, but multiple fraudulent applications for government funds from programs designed to help small businesses impacted by the pandemic. Fitzgerald-Holley submitted these applications, claiming that the funds would be used to keep a nonprofit organization operating and making payroll. When Fitzgerald-Holley's first fraudulent application was denied, he *again* submitted fraudulent paperwork in an effort to obtain government funds. In addition, he falsified federal tax documents to support this application. Upon receipt of these fraudulent proceeds, Fitzgerald-Holley quickly spent nearly all the funds on personal items – an expensive car, clothing, televisions – rather than on any allowable items such as payroll or mortgage expenses. While the Defendant claimed to be submitting these applications on behalf of a nonprofit organization—purportedly established to do work benefiting others—he was really using these funds entirely for personal use.

The Defendant's scheme did not just impact the bank that he stole from. It also had a

broader impact on the community, as schemes like these prevented legitimate businesses from obtaining PPP funds. As the media documented throughout 2020, the SBA and participating lenders struggled to keep up with the demand for PPP funding in the early days of the pandemic; in fact, the first round of PPP funding was exhausted within two weeks.[2] Fraudulent applications like those submitted by the Defendant took funds from those businesses that needed them, often preventing those businesses from making payroll or paying rent.

With respect to the history and characteristics of the Defendant, Fitzgerald-Holley has no criminal history and has a history of gainful employment. He has a high school degree and appears to have completed some college. He reported to Probation that he has held several jobs, including as a special education teacher, and based on the PSR it appears that he was employed and earning approximately $70,000 a year when he committed PPP fraud.

II. **The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct (18 U.S.C. 3553(a)(2))**

The government respectfully submits that a sentence at the low end of the Guidelines range is appropriate and sufficient, but not greater than necessary, in light of consideration of the 3553(a)(2) factors in this case.

First, this was a serious offense. In 2020, as the COVID-19 pandemic spread across the country, the government created PPP loans to help small business owners and their employees whose livelihoods were jeopardized. The Defendant took advantage of the PPP by submitting a false application claiming to have employees and payroll that did not exist. He stole more than $300,000 by submitting a fraudulent application and falsifying tax forms. As noted above,

---

2 *See, e.g.,* https://www.latimes.com/politics/story/2020-06-18/governments-forgivable-loans-helped-save-millions-of-jobs-but-money-is-running-out-for-many;
https://www.bizjournals.com/baltimore/news/2020/04/17/i-feel-like-im-in-a-catch-22-maryland-businesses.html

Fitzgerald-Holley's crimes not only affected the victim financial institution, his conduct also impacted small businesses suffering in the COVID-19 pandemic.

Second, a term of incarceration if appropriate to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence. As noted above, the Defendant's crime was serious. He stole money by lying and fabricating federal tax documents, all while claiming to act on behalf of a nonprofit. The actions of Fitzgerald-Holley and those like him who seek to defraud these programs make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. Such actions also lead to significant waste of taxpayer funds. Accordingly, the recommended sentence at the low end of the applicable Guidelines range is sufficient, but not greater than necessary, to reflect the seriousness of this crime and deter those like the Defendant who seek to steal from government benefit programs.

## RESTITUTION

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1). Restitution in this case is $305,854, which represents the fraudulently obtained proceeds and the loss to Institution 1. Institution 1 has submitted a victim impact statement detailing its losses, which is attached as Exhibit A (under seal). Accordingly, the government requests that the Court order restitution be made to Institution 1 in the amount of $305,854.

Date: January 24, 2021

    Respectfully submitted,

                                       Erek L. Barron
                                       Acting United States Attorney
                                       District of Maryland

By:   /s/
Caitlin Cottingham
Assistant United States Attorney
United States Attorney's Office
District of Maryland
Caitlin.Cottingham@usdoj.gov

Joseph Beemsterboer
Acting Chief, Fraud Section

By:   /s/
John J. Liolos
Trial Attorney
Fraud Section, Criminal Division
Department of Justice

## CERTIFICATE OF SERVICE

    I, Caitlin R. Cottingham, HEREBY CERTIFY that a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all counsel of record, on January 24, 2021.

By: */s/ Caitlin R. Cottingham*
CAITLIN R. COTTINGHAM
Assistant United States Attorney
